UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC., <br>     *Plaintiff*, <br><br> *vs.* <br><br> COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, *et al.*, <br>     *Defendants.* | ) <br> ) <br> ) <br> )  1:13-cv-1335-JMS-MJD <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER**

Presently pending before the Court is Plaintiff Planned Parenthood of Indiana and Kentucky, Inc.'s ("PPINK") Motion for Preliminary Injunction. [Dkt. 7.] PPINK asks the Court to enjoin the Defendants Commissioner, Indiana State Department of Health ("IDOH"), and Prosecutor, Tippecanoe County (collectively, the "State") from enforcing Indiana Code §§ 16-18-2-1.5(a)(2) and 16-21-2-2.5(b) because PPINK contends that those sections violate various provisions of the federal Constitution.

As part of the facts underlying its claims, PPINK alleges that on July 15, 2013, it submitted an "Application for License to Operate Abortion Clinic" under Indiana Code § 16-18-2-1.5 for PPINK's Lafayette clinic. [Dkts. 1 at 11; 1-1 at 4-8.] With that application, PPINK submitted a written request that the IDOH waive certain surgical-related physical plant facility requirements for the Lafayette clinic pursuant to Indiana Code § 16-21-1-9 because the Lafayette clinic does not perform surgical abortions or any other type of surgical procedure. [Dkt. 1-1 at 1-3.] Indiana Code § 16-21-1-9, which is not challenged in this litigation, allows the IDOH to waive a rule as long as that wavier does "not adversely affect the health, safety, and welfare of the residents or patients." But pursuant to a statutory amendment effective July 1, 2013—the constitu-

tionality of which is challenged in this litigation—the IDOH "may not exempt an abortion clinic from the requirements . . . including physical plant requirements." I.C. § 16-21-2-2.5(b). That provision "applies to a person applying for a license as an abortion clinic after December 31, 2013." I.C. § 16-21-2-2.5(b).

PPINK contends, and the State admits, that the IDOH has not acted on PPINK's application or waiver requests. [Dkts. 1 at 11 (PPINK's allegation); 33 at 15 (State's answer admitting allegation); 42 at 10 (State's response brief confirming that the IDOH had not acted on application or waiver requests as of October 17, 2013).] PPINK noted in its opening brief that it is unclear whether the temporal limitation on the waiver prohibition for abortion clinic physical plant requirements—"after December 31, 2013"—applies to clinics that apply for a license after December 31, 2013, or applies to clinics whose applications seek waiver for a time period encompassing a date after December 31, 2013. [Dkt. 29 at 21 n.9 (citing I.C. § 16-21-2-2.5(b)).] The State did not respond to that point and has taken no position regarding its interpretation of the temporal limitation in Indiana Code § 16-21-2-2.5(b), particularly whether the IDOH currently has the ability to grant PPINK's requested waiver under § 16-21-1-9. Likewise, there is no evidence in the record regarding the IDOH Commissioner's interpretation of the waiver prohibition in § 16-21-2-2.5(b), when he anticipates the IDOH ruling on PPINK's application and waiver requests, and whether he believes the IDOH currently has the authority to grant PPINK's waiver request.

Why does this matter? Courts "must avoid unnecessary constitutional adjudication." *Brandt v. Vill. of Winnetka, Ill.*, 612 F.3d 647, 650 (7th Cir. 2010). "[I]t is hard to see how a court can evaluate a [constitutional] challenge sensibly until a law *is* applied, or application is soon to occur and the way in which it works can be determined." *Id.* (original emphasis). While

any pre-enforcement suit "entails some element of chance," *Brandt*, 612 F.3d at 649, "[a] case is not ripe if the issues are still poorly formed or the application of the statute is uncertain," *Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985), *aff'd*, 475 U.S. 1001 (1986).

The fact that there is no administrative decision for this Court to review presents practical challenges in resolving the parties' disputes. This is particularly so because in Indiana, an interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is typically entitled to great weight. *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000). Additionally, depending on how the IDOH rules, issues of standing or mootness may arise. For example, if the IDOH still has the authority to grant PPINK's waiver request and waives the surgical-related physical plant facility requirements for the Lafayette clinic, PPINK would likely lose its standing to challenge the constitutionality of the statutes at issue because it would have no injury. *See Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, --- F.3d ---, 2013 U.S. App. LEXIS 21939 (7th Cir. 2013) ("To establish its standing, [the plaintiff] must show that it has an injury in fact—an invasion of a legally protected interest which is ... concrete and particularized—and that its injury is fairly traceable to the defendant's conduct and likely to be redressed by the requested relief.") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). On the other hand, if the IDOH has no authority to waive the surgical-related physical plant facility requirements for the Lafayette clinic because PPINK is seeking a waiver for an application with a term extending beyond December 31, 2013, the IDOH could grant PPINK's application as an "abortion clinic" but summarily deny its waiver request, thus confirming an element of PPINK's standing to bring this action. Or if the IDOH decides that PPINK is a "physician's office" under § 16-18-2-1.5(b) instead of an "abortion clinic" under § 16-18-2-1.5(a), it

could deny PPINK's abortion clinic application on that basis, which would render the waiver request moot and likely leave PPINK with no injury.

Because the IDOH has not yet acted on PPINK's application or waiver requests, there is currently no indication whether PPINK's Lafayette clinic will be considered an "abortion clinic" on January 1, 2014, I.C. § 16-18-2-1.5(a), such that it would be subject to the surgical-related physical plant requirements that it contends it does not currently meet. But this uncertainty is not due to delay on PPINK's part, considering that it filed its application and waiver requests within two weeks of the effective dates of the challenged statutes. PPINK's application and waiver requests have been pending before the IDOH for almost four months, and it is undisputed that the challenged statutes modify the definition and regulation of what is an "abortion clinic" in a way that could impact PPINK's Lafayette clinic in approximately seven weeks. Given this time frame, the Court **ORDERS** the State to file a **report** by **November 13, 2013**, detailing the status of PPINK's abortion clinic application and waiver requests, why those requests have not yet been ruled on, the average amount of time it has taken the IDOH to rule on similar requests, and when the IDOH anticipates ruling on PPINK's pending requests.

11/08/2013

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Talcott Camp
AMERICAN CIVIL LIBERTIES UNION
tcamp@aclu.org

Kenneth J. Falk
ACLU OF INDIANA

kfalk@aclu-in.org

Thomas M. Fisher
OFFICE OF THE ATTORNEY GENERAL
tom.fisher@atg.in.gov

Ashley Tatman Harwel
OFFICE OF THE INDIANA ATTORNEY GENERAL
ashley.harwel@atg.in.gov

Helene T. Krasnoff
PLANNED PARENTHOOD FEDERATION OF AMERICA
helene.krasnoff@ppfa.org

Heather Hagan McVeigh
OFFICE OF THE ATTORNEY GENERAL
heather.mcveigh@atg.in.gov

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org